UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE SMITH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC, <br><br> Defendant. | Case No. 21-cv-09390-JST <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: ECF No. 35 |

Before the Court is Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC's ("GSK") motion to dismiss. ECF No. 35. The Court will grant the motion.

## I.    BACKGROUND

For purposes of the instant motion, the Court accepts the following facts as true. Caused by the herpes simplex virus ("HSV"), cold sores generally persist for two to four weeks before the body heals them on its own. First Amended Class Action Complaint ("FACAC") ¶¶ 10-11, ECF No. 25. There is no known cure for HSV, but a variety of prescriptions and over-the-counter medications exist to treat HSV by relieving discomfort, shortening healing time, or reducing transmission. *Id.* ¶ 12. Abreva is one such over-the-counter medication. *Id.* ¶ 13. Abreva is a topical cream that contains 10% of the active ingredient docosanol, which is the only ingredient available without a prescription approved by the FDA to shorten the healing time of cold sores. *Id.* ¶ 13. Avanir Pharmaceuticals developed Abreva in the late 1990s, and the U.S. Food and Drug Administration ("FDA") approved Avanir's new drug application for Abreva in 2000.[1] *Id.* ¶ 14.

---

[1] The FDA has two systems for regulating new over-the-counter medications, only one of which is relevant here. Under that system, the FDA reviews and approves a "detailed new drug application" submitted by a manufacturer "in accordance with the requirements of the [Federal Food, Drug, and Cosmetic Act] and related regulations promulgated by the FDA." *Kanter v.*

United States District Court
Northern District of California

In approving Abreva, the FDA "cautioned" Avanir "not to promote the product as an antiviral or as providing symptomatic relief of cold sores." *Id.* ¶ 18. The FDA further instructed Avanir that "[p]romotion of symptomatic benefit should be limited to the information provided in the labeling, that the product shortens healing time and duration of symptoms." *Id.* Today, GSK manufactures, markets, and sells Abreva. *Id.* ¶ 1.

Plaintiffs Jasmine Smith and Tawneya Houser purchased Abreva in or around February 2021 and spring 2020, respectively. *Id.* ¶¶ 3, 4. In making their purchases, Plaintiffs relied on various advertisements. *Id.* ¶¶ 20-32. One advertisement image claimed, "YOU CAN GET RID OF YOUR COLD SORES IN 2½ DAYS*," and three other advertisements contained identical or substantially similar language followed by an asterisk. *Id.* ¶¶ 22-25. The asterisk corresponding to each statement was defined in smaller font at the bottom of the images and read, "*When used at first sign. Median healing time 4.1 days. 25% of users healed by 2.5 days." *Id.* One of these advertisements further stated that Abreva "[p]enetrates deep beneath the skin, to the source of the spreading virus*," and "[h]elps block the virus and helps protect healthy skin cells**." *Id.* ¶ 25. The double asterisk was defined as the preceding disclaimer, while the single asterisk read, "*Based on laboratory studies." *Id.* Another advertisement claimed that Abreva is "PROVEN TO HEAL COLD SORES & SHORTEN THE DURATION OF" pain, burning itching, and tingling. *Id.* ¶ 27.

Plaintiffs further relied on a webpage that featured substantially similar language and the same disclaimer. *Id.* ¶ 26. The webpage also stated, "*Nothing heals a cold sore faster.**" *Id.* (emphasis in original). The webpage defined the double asterisk as "Median healing time 4.1 days. 25% of users healed within 2½ days." *Id.* Plaintiffs additionally relied on three video advertisements that featured the following statements: "Just because there isn't a cure for cold sores, doesn't mean you have to suffer patiently until it clears up on its own"; "When used at the first sign, you could knock out your cold sore in 2.5 days"; and "PENETRATES DEEP INTO

*Warner-Lambert Co.*, 99 Cal. App. 4th 780, 784 (2002); *see* 21 C.F.R. §§ 314.1-314.3, 314.50. After the FDA approves a manufacturer's new drug application, "any change in the labeling requires a supplement to an application and approval by the FDA." *Kanter*, 99 Cal. App. 4th at 785; *see* 21 C.F.R. §§ 314.70(b)-(c), 314.71.

THE SKIN AND STARTS TO WORK IMMEDIATELY TO BLOCK THE VIRUS." *Id.* ¶¶ 28-29, 31-32.

Plaintiffs allege that Abreva did not heal their cold sores either within 2.5 days, as advertised, or within the time period set forth in the advertisements' disclaimers and clarifying language. *Id.* ¶¶ 3-4. Plaintiffs further allege that Abreva is ineffective, cannot cure a cold sore within 2.5 days, and does not provide symptomatic and anti-viral relief, such that GSK's advertisements amount to material misrepresentations and omissions in violation of California law. *Id.* ¶¶ 3-4, 34, 36-53. Plaintiffs bring claims for (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (3) violation of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1792 *et seq.*; (4) violation California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500 *et seq.*; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) fraudulent misrepresentation; (8) negligent misrepresentation; (9) fraud by omission; and (10) unjust enrichment. *Id.* ¶¶ 134-232. Plaintiffs seek to represent a nationwide class comprising:

> All individual residents of the United States who purchased [Abreva] through the date of class certification. Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

*Id.* ¶ 126. Plaintiffs also seek to represent an analogous California subclass. *Id.*

Plaintiffs filed their original complaint on December 3, 2021. ECF No. 1. GSK moved to dismiss the complaint, ECF No. 18, and Plaintiffs filed the operative amended complaint in response to the motion on February 25, 2022, ECF No. 25. GSK subsequently filed the instant motion to dismiss on March 25, 2022. ECF No. 35. Following several extensions of the briefing schedule, ECF Nos. 38 & 45, the Court took the motion under submission without a hearing on October 11, 2022, ECF No. 49.

United States District Court
Northern District of California

## II.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.  DISCUSSION

The parties dispute whether (1) Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*; (2) the complaint fails to plead Plaintiffs' fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b); and (3) the complaint fails to plausibly allege a misrepresentation or breach of any promise.  The Court takes each dispute in turn.

### A.  Preemption

GSK argues that all of Plaintiffs' claims are preempted by 21 U.S.C. § 379r.  ECF No. 35

4

at 25-28. Plaintiffs argue that preemption does not apply to claims for breach of express warranty and that Section 379r applies only to claims pertaining to medication labeling, whereas Plaintiffs' claims pertain to advertising. ECF No. 43 at 19-25.

### 1.    Section 379r Preemption

"Preemption of state law, by operation of the Supremacy Clause, can occur in one of several ways: express, field, or conflict preemption." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1027 (9th Cir. 2022) (quoting *Beaver v. Tasadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016)). "Absent express congressional preemption," field preemption occurs "'when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively,'" and conflict preemption occurs "where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (alteration in original) (first quoting *Kurns v. R.R. Fiction Prods. Corp.*, 565 U.S. 625, 630 (2012); and then quoting *Beaver*, 816 F.3d at 1179). "[P]reemption analysis is driven by the presumption that 'the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Beaver*, 816 F.3d at 1179).

Enacted as Section 751 of the Food and Drug Administration Modernization Act of 1997, Pub L. No. 105-115, 111 Stat. 2374-76 (1997), Section 379r(a) provides, in relevant part,

> Except as provided in subsection (b), (c)(1), (d), (e), or (f), no State . . . may establish or continue in effect any requirement—(1) that relates to the regulation of a [nonprescription drug]; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA] . . . .

This provision is an express preemption clause. *Carter v. Novartis Consumer Health*, 582 F. Supp. 2d 1271, 1279 (C.D. Cal. 2008); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). The extent to which Plaintiffs claims are expressly preempted, then, turns on the construction of the statutory term "requirement."

The Supreme Court addressed substantially similar circumstances in the context of medical devices governed by the FDCA in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008). There, the Court considered 21 U.S.C. § 360k(a) – an express preemption clause codified pursuant to the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. §§ 360c *et seq*. The clause provided,

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement— (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

*Riegel*, 552 U.S. at 316 (quoting 21 U.S.C. § 360k(a)). The *Riegel* plaintiffs alleged that the defendant's catheter was designed, labeled, and manufactured in a manner that violated New York common law. *Id.* at 320. They brought New York common law claims for strict liability, breach of implied warranty, and negligence. *Id.*

The Court started by noting that state legal requirements "are pre-empted 'only when the Food and Drug Administration has established specific counterpart regulations or there are other *specific requirements applicable to a particular device . . . .*'" 552 U.S. at 322 (quoting 21 CFR § 808.1(d) (emphasis added)). Thus, "federal manufacturing and labeling requirements applicable across the board to almost all medical devices [do] not pre-empt the common-law claims of negligence and strict liability," because those federal requirements are "not requirements specific to the device in question—they reflect[] 'entirely generic concerns about device regulation generally.'" *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 501 (1996)).

By contrast, the Court in *Riegel* held that premarket approval of the catheter was specific to individual medical devices and thus imposed "requirements" within the meaning of Section 360k(a). *Id.* at 320. The Court further held that "[a]bsent other indication, reference to a State's 'requirements' includes its common-law duties" because "common-law liability is 'premised on the existence of a legal duty' and a tort judgment therefore establishes that the defendant has violated a state-law obligation." *Id.* at 324 (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522 (1992) (plurality opinion)). As a result, "[s]tate tort law that requires a manufacturer's catheters to be safer . . . than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect." *Id.* at 325. Because the plaintiffs' suit "depend[ed] upon New York's 'continu[ing] in effect' general tort duties 'with respect to' [the defendant's] catheter" that imposed additional or different requirements than those imposed by the FDA, the

6

Court held that Section 360k(a) preempted the plaintiffs' claims. *Id.* at 328.

Several courts have applied this reasoning to Section 379r. In *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008), the district court considered Section 379r preemption in the context of claims predicated on allegations that certain over-the-counter cold medicines were ineffective and dangerous to children under the age of six. *Id.* at 1276. Like Abreva, one of the medications at issue had been approved by the FDA pursuant to a new drug application. The complaints at issue asserted claims under the New Jersey Consumer Fraud Act, N.J. Rev. Stat. §§ 56:8-1 *et seq.*, as well as common law claims for unjust enrichment, false and misleading advertising, fraudulent concealment, unfair and deceptive business practices, and breach of express and implied warranties. *Id.* at 1277.

The district court adopted the Supreme Court's "expansive reading of 'requirement'" in *Riegel* because of "the structural similarities between § 360k(a) and § 379r(a)", as well as "their close relation in the overall regulatory context." As a result, "virtually any state requirement that relates to the regulation of nonprescription drugs can be preempted, regardless of the common law theory under which it is brought," but only "to the extent that [state requirements] differ from federal requirements." *Id.* at 1282. The district court further explained that Section 379r preemption is not confined to labeling claims, but also applies to "claims based upon FDA-approved statements in product . . . advertising." *Id.* at 1286. This is because "[t]he touchstone of preemption under § 379r is the *effect* that a finding of liability on a particular claim would have on [a] [d]efendant[], and not the particular common law or state theory upon which that claim was brought." *Id.* at 1283 (emphasis in original). In view of *Riegel*, however, state law claims "that go beyond the FDA-approved labeling and advertising," *id.* at 1286, are not preempted because such claims would not be "at variance with FDA regulations," *id.* at 1283.

Similarly, the California Court of Appeal in *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780 (2002), considered a complaint alleging that product labels for over-the-counter medicines for the treatment of head lice contained false and misleading statements about the effectiveness of the drugs. The medicine had also been approved by the FDA pursuant to a new drug application. Like the complaint at hand, the complaint in *Kanter* asserted state law claims for breach of express

warranty, fraud, and violations of the UCL, CLRA, and FAL. *Id.* at 788. In a pre-*Riegel* decision, the Court of Appeal held that "when a state law claim, *however couched*, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted." *Id.* at 795 (emphasis added). The Court of Appeal observed that each of the plaintiffs' legal theories "is bottomed on the assertion that th[e] approved label is no longer accurate or adequate and that the label should be changed or the product banned." *Id.* at 796. Accordingly, the Court of Appeal held that the plaintiffs claimed were preempted because "[e]ach cause of action would result in the establishment of a state requirement regarding the label that would be 'different from' and 'otherwise not identical with' the federally required label." *Id.* (quoting Section 379r(a)).

Another district court recently cited these and other cases for the proposition that "claims that are founded in FDA-approved labeling [are] pre-empted under § 379r, regardless of how those claims are styled," including "state-law advertising claims, provided the advertisements are based upon content approved by the FDA for a drug's labeling." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 512 F. Supp. 3d 1278, 1297 (S.D. Fla. 2021), *appeal filed*.

Although the Ninth Circuit has not expressed a view on the scope of Section 379r preemption, it has applied preemption doctrine in substantially the same manner. In *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283 (9th Cir. 2021), the Ninth Circuit held that the Poultry Products Inspection Act preempted some but not all claims pertaining to the advertisement of the defendant's frozen chicken products. The Act's express preemption provision provided that any "[m]arking, labeling, packaging, or ingredient requirements . . . in addition to, or different than, those made under this chapter may not be imposed by any State." *Id.* at 1287 (alteration in original) (quoting 21 U.S.C. § 467e). The United States Department of Agriculture's Food Safety and Inspection Service had approved the product label that stated, "Made with 100% Natural White Meat Chicken." *Id.* at 1290. The plaintiffs challenged a representation on the defendant's website that stated, "They're made with 100% natural, white meat chicken *and* without preservatives, artificial flavors, or artificial colors." *Id.* (emphasis in original).

The Ninth Circuit wrote that, although "[a] website representation is not a label," "state

United States District Court
Northern District of California

law claims related to advertising that are 'premised ultimately upon the inadequacy of the product label' are treated the same as a state law claim about the label itself." *Id.* at 1290 (quoting *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 561 (9th Cir. 1995)).  The plaintiffs' claims were thus preempted to the extent that they were "materially identical" to the representation on the approved product label.  *Id.*  Accordingly, the Ninth Circuit held that the plaintiffs' challenge to the website's representation that the products were "made with 100% natural, white meat chicken" was preempted, while the plaintiffs' challenge to the representation that the products were "made . . . without preservatives, artificial flavors, or artificial colors" was not.  *Id.*

Therefore, regardless of the source of state law, and regardless of whether the alleged misrepresentation appears in the label, on the packaging, or in advertisements elsewhere, Section 379r preempts state law claims to the extent that those claims "would effectively require a manufacturer to include additional or different information on a federally approved label." *Kanter*, 99 Cal. App. 4th at 795;  *see also Faustino v. Alcon Lab'ys, Inc.*, No. 15-CV-04145-RGK(AJWX), 2015 WL 12839161, at *2 (C.D. Cal. Sept. 22, 2015), *aff'd sub nom. Faustino v. Alcon Lab'ys, Inc. (a division of Novartis AG)*, 692 F. App'x 819 (9th Cir. 2017).  Conversely, claims are not preempted to the extent that they are at variance with the FDA-approved label.  Thus, courts "have declined to find preemption [where] . . . label uniformity was not at issue." *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 454 (2015).

### 2.    Application

In order to evaluate the extent to which Plaintiffs' claims are preempted, the Court must consider the FDA's approval of Abreva.  Under the "incorporation by reference" doctrine, the Court may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no parties question, but which are not physically attached to the [plaintiff's] pleading.'"  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.* 865 F.3d 1130, 1146 (9th Cir. 2016)).  This includes "situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not

United States District Court
Northern District of California

dispute the authenticity of the document, even though the plaintiff does no explicitly allege the contents of that document in the complaint." *Id.*

Here, the complaint explicitly describes the contents of documents relating to FDA approval: "Dr. DeLap advised Avanir that 'We have . . . concluded that adequate information has been presented to demonstrate that the drug product is safe and effective for use as recommended in the agreed upon labeling text.'" FACAC ¶ 18.  GSK attached this letter from Dr. DeLap to Avanir to its motion to dismiss, and the Court therefore incorporates the letter by reference.  *See* ECF No. 35-2.  The letter reads, "The final printed labeling . . . must be identical to the submitted draft labeling (immediate container and carton labels submitted July 21, 2000 and amended by your July 25 fax) . . . ."  *Id.* at 2.  Although the letter proceeds to describe the scope of the FDA's approval, it does not include the actual label to which the letter refers.  *See* U.S. Food and Drug Admin., Ctr. for Drug Eval. and Res., 20-941 Final Printed Labeling (2000), https://www.accessdata.fda.gov/drugsatfda_docs/nda/2000/20-941_Abreva_prntlbl.pdf.  The Court also incorporates the label by reference because its contents of the label are intertwined with the contents of the letter and with Plaintiffs' claims, as well as necessary for the Court's assessment of those claims.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("Even though the complaint did not 'allege or describe the contents of the surrounding pages,' it was proper to incorporate them because the claim necessarily depended on them." (quoting *Knievel*, 393 F.3d at 1076)).

As discussed above, the letter states that the FDA "concluded that the drug product is safe and effective for use as recommended in the agreed upon labeling text."  ECF No. 35-2 at 2.  The letter further states, "You are cautioned not to promote the product as an antiviral or as providing symptomatic relief of cold sores.  Promotion of symptomatic benefit should be limited to the information provided in labeling, that the product shortens healing time and duration of symptoms."  *Id.*  The approved label, in turn, reads: "treats cold sores/fever blisters on the face or lips," and "shortens healing time and duration of symptoms: tingling, pain, burning, itching."  20-941 Final Printed Labeling at 5.

Section 379r thus preempts all of Plaintiffs' claims to the extent that they are predicated on

10

allegations that Abreva is ineffective and cannot shorten the healing time and duration of symptoms because these representations in Abreva's advertisements are "materially identical" to those on the label approved by the FDA. *ConAgra Brands*, 16 F.4th at 1290. Considering "the *effect* that a finding of liability on [these] claim[s] would have on [GSK]," it is clear that such a finding "would result in the establishment of a state requirement regarding the label that would be 'different from' and 'otherwise not identical with' the federally required label." *Carter*, 582 F. Supp. 2d at 1283 (emphasis in original); *Kanter*, 99 Cal. App. 4th at 796 (quoting Section 379r(a)). However, Plaintiffs' claims are not preempted to the extent that they are predicated GSK's representations that Abreva can heal a cold sore in 2.5 days and that nothing heals a cold sore faster because those representations "go beyond the FDA-approved labeling and advertising" and are thus "at variance with" that approval.[2] *Carter*, 582 F. Supp. 2d at 1286, 1283.

Plaintiffs' arguments to the contrary are without merit. First, Plaintiffs argue that preemption does not apply to claims for breach of express warranty. ECF No. 43 at 19-20. Per the Supreme Court's reasoning in *Riegel*, however, the preemption inquiry turns on whether Plaintiffs' claims "depend[] on [California's] 'continu[ing] in effect' general tort duties 'with respect to' [Abreva]." 552 U.S. at 328 (quoting 21 U.S.C. § 360k(a)). No less than Plaintiffs' other preempted claims, a finding of liability of Plaintiffs' claim for breach of express warranty predicated on the same allegations "would effectively require [GSK] to include additional or different information on [its] federally approved label," *Kanter*, 99 Cal. App. 4th at 795, which is precisely why state common law claims may be preempted "regardless of the common law theory under which [they] are brought," *Carter*, 582 F. Supp. 2d at 1286. Both the district court in *Carter* and California Court of Appeal in *Kanter* held that the plaintiffs' respective breach of express warranty claims were preempted on this basis.

_____

[2] The complaint repeatedly alleges that GSK represents Abreva as capable of providing "symptomatic and anti-viral benefits." The complaint appears to associate that representation both with the representation that Abreva can shorten healing time and duration of symptoms, on the one hand, and the representation that Abreva can heal a cold sore in 2.5 days, on the other. Accordingly, Plaintiffs' claims with respect to the representation that Abreva can provide symptomatic and anti-viral benefits are preempted to the extent that this representation correlates to GSK's former representation, but Plaintiffs' claims are not preempted to the extent that this representation correlates to GSK's latter representation.

11

Second, Plaintiffs argue that Section 379r preempts only labeling claims, not advertising claims. But the law makes no such distinction: as the Ninth Circuit wrote in *ConAgra Brands*, "State law claims related to advertising that are 'premised ultimately upon the inadequacy of the product label' are treated the same as a state law claim about the label itself." 16 F.4th at 1290 (quoting *Taylor AG Indus.*, 54 F.3d at 561); *see also Carter*, 582 F. Supp. at 1286; *In re Zantac*, 512 F. Supp. 3d at 1297.

Third, Plaintiffs argue that this case is distinguishable from *Carter*. ECF No. 43 at 24-25. But, as discussed above, *Carter* comports with controlling Supreme Court and Ninth Circuit precedent and bears directly on the question of the extent to which Plaintiffs' claims are preempted.

Defendants argue that Plaintiffs' claims are *all* preempted, including to the extent that they are predicated on GSK's representations that Abreva can heal a cold sore in 2.5 days and that nothing heals a cold sore faster. ECF No. 35 at 25-28. With respect to the former representation, GSK asserts in a conclusory manner that the 2.5-days representation "is based on data that the FDA considered prior to approving Abreva for the purpose of shortening healing time and duration of symptoms . . . and is therefore fully consistent with the FDA's determination of safety and effectiveness." ECF No. 28 at 27. But preemption requires that the representation be coextensive with, not merely consistent with, the FDA's determination. Nothing in the language of the FDA's approval letter or the approved labeling that mentions the 2.5-days figure, let alone implicitly endorses such a representation. *Cf. Kanter*, 99 Cal. App. 4th at 797 ("The challenged statements on the . . . labels . . . do nothing more than express in direct, straightforward, and easily understood language that which is implicit in the mandatory labeling.").

With respect to the latter representation, GSK argues that the disclaimer language accompanying the representation that "[n]*othing heals a cold sore faster*" brings the statement within the scope of the FDA's approval. ECF No. 46 at 18. The Court disagrees. This so-called "clarifying language," *id.*, states, "Median healing time 4.1 days. 25% of users healed within 2½ days," FACAC ¶ 26. Again, the approval letter and approved labeling do not mention, let alone approve a representation of, Abreva achieving a median healing time of 4.1 days or healing 25%

12

of users within 2.5 days.

Accordingly, the Court proceeds to consider whether the complaint suffices to state claims predicated on GSK's representations that Abreva can heal a cold sore in 2.5 days and that nothing heals a cold sore faster.

### B.    Federal Rule of Civil Procedure Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake," but allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to "be alleged generally."  The pleading of a claim "as a whole must satisfy the particularity requirement of Rule 9(b)" where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Because "the Federal Rules of Civil Procedure apply in federal court[] 'irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal,'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1102), courts have consistently applied Rule 9(b)'s heightened pleading requirements to claims arising under the UCL, CLRA, FAL, as well as claims for fraudulent misrepresentation, negligent misrepresentation, fraud by omission, and unjust enrichment.  *E.g.*, *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962 (N.D. Cal. 2015) (applying Rule 9(b) to claims under the UCL, CLRA, and FAL); *Wang v. OCZ Tech. Grp.*, *Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) (applying Rule 9(b) to claims under the UCL, CLRA, FAL, as well as claims for negligent misrepresentation and unjust enrichment); *Scherer v. FCA US, LLC*, 565 F. Supp. 3d 1184 (S.D. Cal. 2021) (applying Rule 9(b) to fraud by omission claim).

All of Plaintiffs' claims sound in fraud because they are premised on the allegation that GSK engaged in a uniform course of fraudulent conduct, i.e., that GSK has long advertised Abreva as effective for the treatment of cold sores despite knowing that the product is ineffective. *See, e.g.,* FACAC ¶ 121 ("Defendants knew, but failed to disclose, or should have known, that Abreva cannot provide the relief it is advertised as providing . . . .).

GSK argues that Plaintiffs have failed to plead their claims with particularity as required

13

by Federal Rule of Civil Procedure 9(b).  ECF No. 35 at 21-36.  Plaintiffs argue that all of their claims rest on a separate theory of fraudulent omission and are therefore held to a lower pleading standard than are claims for misrepresentation; that they sufficiently plead their claims with particularity regardless; and that they are otherwise not required to plead individualized reliance on specific misrepresentations pursuant to the holding in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).

### 1.      Omission

Plaintiffs argue that all of their claims rest on a theory of fraudulent omission such that they are subject to a lower pleading standard.  ECF No. 43 at 12.  Plaintiffs are only half-right: they are correct to the extent that "'a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim,' and such a claim "'will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct.'"  *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 817 (N.D. Cal. 2019) (quoting *Falk v. Gen. Motors Cop.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)).

They are not correct, however, that this lower pleading standard applies to *their claims*, which expressly characterize GSK's conduct in terms of affirmative misrepresentations rather than omissions.  *See, e.g.*, FACAC ¶¶ 1 ("Defendants represent in their advertising and marketing that Abreva can heal a cold sore in 2 ½ days, but it does not and cannot.  Defendants further unqualifiedly represent that '[n]othing heals a cold sore faster. (alteration in original)), 36-37 ("Defendants' representations . . . lead reasonable consumers to believe that if the product is used with the instructions that their cold sores could heal in as few as 2 ½ days . . . . However, these representations are false.  As Defendants' own research shows, Abreva cannot heal a cold sore in 2 ½ days." ).

Faced with similar circumstances, courts have declined to consider claims under a theory of fraudulent omission when they are, in substance, misrepresentation claims.  For example, in *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*, 295 F. Supp. 3d 927, 946 (N.D. Cal. 2018), the plaintiffs alleged that they purchased vehicles that

14

were advertised as having "EcoDiesel" features when the vehicles "actually emitted [nitrogen oxides] at levels up to 20 times legal limits." The district court declined to treat plaintiffs' nominal fraudulent concealment claim as such because it was based on the allegation that the manufacturer's represented that the vehicles were "EcoDiesel" when, in fact, they were not. *Id.* at 986. The district court wrote that the allegation was "of an affirmative misrepresentation, and not a fraudulent omission or concealment. Accordingly, to the extent Plaintiffs have characterized their fraud-on-consumer claims solely as fraudulent concealment claims, . . . that appears to be mistaken." *Id.* The Court proceeded to address those claims under the framework of affirmative misrepresentation claims. *Id.* at 992-994. This Court similarly declines to treat Plaintiffs' claims as omission claims for purposes of determining the applicable legal standard.

The Court reaches the same conclusion with regard to Plaintiffs' fraud by omission claim. The complaint's allegations with respect to this claim are identical to Plaintiffs' allegations with respect to their misrepresentation claims: "Defendant actively concealed the truth about Abreva by not disclosing that it cannot heal cold sores in 2 ½ days . . . and that it does not heal cold sores faster than readily available alternatives." FACAC ¶ 221. Again, this allegation is functionally equivalent to Plaintiffs' affirmative misrepresentation allegations.

The California Court of Appeal addressed this distinction in *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30 (1975). In that case, purchasers of an off-road vehicle brought two claims against the vehicle's manufacturer: one under California Code of Civil Procedure Section 382 for fraudulent concealment, and another under the CLRA for fraudulent misrepresentation. *Id.* at 34. Both claims were premised on virtually identical allegations that the vehicle did not operate within the specifications represented by the manufacture.

The Court of Appeal held that the CLRA's proscription of representations that goods "'are of a particular standard, quality, or grade, . . . if they are another'" included "a proscription against the concealment of the characteristics, use, benefit, or quality of the goods contrary to that represented." *Id.* at 37 (quoting Cal. Civ. Code § 1770). The Court of Appeal found "no demonstrable difference between the allegations of the first and second causes of action" because "they allege[d] the same conduct, the same causal relation (the reliance in each case the purchase

of the [vehicle]) and the same damage, all resulting from conduct clearly proscribed by [the CLRA." *Id.* In reaching that holding, the Court of Appeal wrote:

> It is fundamental that every affirmative misrepresentation of fact works a concealment of the true fact. The first cause of action of the first amended complaint is a semantical attempt to evade the requirement of the [CLRA] by pleading the converse of the conduct specified in the [CLRA]. A comparison of the allegations contained in the second cause of action with the concealment allegations of the first cause of action reveals that the two causes of action allege, in different language, identical conduct.

*Id.* at 36-37. On this basis, the Court of Appeal held that the trial court erred in overruling the manufacturer's demurrer to the plaintiffs' complaint. *Outboard Marine*, 52 Cal. App. at 37.

The Court analogously rejects Plaintiffs' "semantical attempt to evade the requirement[s]" of Rule 9(b) "by pleading the converse of the conduct" that serves as the basis for their misrepresentation claims. *Id..* at 36; *see also* 37 Am. Jur. 2d Fraud and Deceit § 194 (2023) ("Where the failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation claims is tenuous. Both are fraudulent, and an active concealment has the same force and effect as a representation that is positive in form."). Accordingly, the Court declines to apply the lower pleading standard to Plaintiffs' fraud by omission claim. *See Vigil v. Gen. Nutrition Corp.*, No. 15-cv-0079 JM (DBH), 2015 WL 2338982, at *11 (S.D. Cal. May 13, 2015) (applying the ordinary Rule 9(b) requirements where non-disclosure could be "viewed as the logical converse of affirmative misrepresentation (as in *Outboard Marine*)"); *Vasic v. Patent Health, LLC*, No. 13-cv-849 AJB (MDD), 2014 WL 940323, at *3 (N.D. Cal. Mar. 10, 2014) (applying the ordinary Rule(b) requirements to non-disclosure claim based on allegations that the defendants "made representations through their uniform advertisements and packaging that stated that the [p]roducts provided joint-health benefits while suppressing the material fact that the product[s] do no such thing" (internal quotation marks omitted)).

### 2. Particularity

"To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent]

statement, and why it is false." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 10477, 1055 (9th Cir. 2011) (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

Plaintiffs argue that their complaint sufficiently alleges the "who, what, when, where, and how" of the misconduct alleged. ECF No. 43 at 12-14. Specifically, Plaintiffs argue that the complaint satisfies the "when" and the "where" because it states approximately when Plaintiffs purchased Abreva and where they purchased it. *Id.* at 13; *see also* FACAC ¶ 3. But this argument misunderstands the pleading requirements. Rule 9(b) requires Plaintiffs to plead "the particular circumstances surrounding" the challenged representations themselves. *Kearns*, 567 F.3d at 1120; *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances *constituting fraud or mistake*." (emphasis added)); *see also Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911 (N.D. Cal. 2020) ("[T]he 'when' of Rule 9(b) is satisfied when a plaintiff pleads that he has purchased the product at issue during a specified class period . . ." (alteration in original) (quoting *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487237, at *14 (N.D. Cal. Oct. 2, 2013)).

As to the "when," Plaintiffs fail to specify "when [they] were exposed to" the advertisements detailed in the complaint. *Kearns*, 567 F.3d at 1120. As to the "where," Plaintiffs fail to allege where these advertisements appeared except for the representation that "[n]*othing heals a cold sore faster*," which Plaintiffs allege appears on GSK's website. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 914 (N.D. Cal. 2018) (holding that the plaintiff failed to satisfy Rule 9(b) where the complaint failed to "identify . . . where she saw this advertising," as well as "what type of advertising it was"); *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (RZx), 2014 WL 12586074, at *11 (C.D. Cal. Oct. 20, 2014) (holding that the plaintiffs failed to satisfy Rule 9(b) where the complaint failed to "identify . . . where they saw [the advertisements]—i.e., in a magazine, on NJOY's website, on NJOY product packaging, or in a packaging insert"); *cf. Kearns*, 567 F.3d at 1120 (describing the plaintiff's allegations of the "where" as "(1) Ford's *televised* marketing campaign; (2) sales materials *found at the dealership* where he bought his vehicle; and (3) sales

17

personnel *working at the dealership* where he bought his vehicle" (emphases added)).  This is not enough, however – Plaintiffs must also identify when *they saw* the website.  *Compare Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at \*9 (N.D. Cal. Jan. 7, 2014) ("[T]o the extent Gustavson asserts claims based on statements appearing on a Wrigley website that Gustavson does not claim to have viewed, these claims fail for lack of standing."), *with Taleshpour v. Apple Inc.*, No. 5:20-CV-03122-EJD, 2021 WL 1197494, at \*11 (N.D. Cal. Mar. 30, 2021) (finding that Plaintiffs pleaded reliance where they "allege[d] that they visited the Apple website prior to purchasing or becoming owners of their laptops").

For these reasons, the Court concludes that Plaintiffs have failed to plead with the particularity required by Rule 9(b).

### 3.  *Tobacco II*

A plaintiff "need not plead specific reliance on an individual representation" when the plaintiff "sufficiently alleges exposure to a long-term advertising campaign as set forth in *Tobacco II*." *Opperman v. Path, Inc.* ("*Opperman II*"),  84 F. Supp. 3d 962, 977 (N.D. Cal. 2015).  This Court has identified six factors to consider in determining whether a plaintiff has sufficiently alleged the kind of long-term advertising campaign that would excuse specific reliance under *Tobacco II*:  (1) "a plaintiff must allege that she actually saw or heard the defendant's advertising campaign"; (2) "the advertising campaign at issue should be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation that she saw and relied upon"; (3) "a plaintiff . . . should describe in the complaint, and preferably attach to it, a 'representative sample' of the advertisements at issue in order to adequately notify the defendant of the precise nature of the misrepresentation claim—that is, what, in particular, the defendant is alleged to have said, and how it is misleading"; (4) "the degree to which the alleged misrepresentations within the advertising campaign are similar to each other, or even identical, is also an important factor"; (5) "in the absence of specific misrepresentations, a complaint subject to Rule 9(b)'s requirements should plead with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign"; and (6) "the court must be able to determine when a plaintiff made her purchase or

United States District Court
Northern District of California

United States District Court
Northern District of California

otherwise relied in relation to a defendant's advertising campaign, so as to determine which portion of that campaign is relevant." *Opperman v. Path, Inc.* ("*Opperman I*"), 87 F. Supp. 3d 1018, 1047-51 (N.D. Cal. 2014).

Here, the Court finds the complaint insufficient as to the second factor. While Plaintiffs argue that Avanir began selling Abreva in 2000, the complaint fails to identify when GSK began an advertising campaign centered around the representations that Abreva is capable of healing cold sores in 2.5 days and that nothing heals a cold sore faster. Additionally, the complaint fails to allege facts that support a conclusion that such a campaign was widespread in dissemination. Plaintiffs point to their allegation that the misrepresentations were made in "advertisements, . . . its website as well as commercials and bulletins on third party websites." ECF No. 43 at 17 (quoting FACAC ¶ 20). But this allegation provides no basis for the Court to infer the extent to which GSK disseminated these representations because it contains no information as to the frequency, duration, or location of their publication. *Opperman I*, 87 F. Supp. 3d at 1051 (finding that the complaint "d[id] not contain sufficient detail concerning the *extent* of the advertising" because "it [wa]s unclear from the [complaint] how often the advertisements were published, or in which media"); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *13 (N.D. Cal. Oct. 29, 2019) ("Plaintiff makes no allegation whatsoever concerning the duration or pervasiveness of Defendant's alleged advertising campaign, which renders *In re Tobacco II* wholly inapplicable."); *cf. Opperman II*, 84 F. Supp. 3d at 979 (finding allegations of a five-year campaign sufficient where the plaintiffs identified "dozens of specific examples of what they believe represents the advertising campaign, and those examples span eighteen pages of the [complaint]"). Without such details, Plaintiffs' allegations of an "aggressive-long-term, decades long, deceptive marketing campaign" comprising "consistent[] and uniform[]" are conclusory. FACAC ¶ 20.

Plaintiffs have therefore failed to allege exposure to a long-term advertising campaign as required by *Tobacco II*. Because Plaintiffs have failed to satisfy Rule 9(b), the complaint fails to state a claim on which relief can be granted. *Vess*, 317 F.3d at 1107.

**CONCLUSION**

For the foregoing reasons, GSK's motion to dismiss is granted. Plaintiffs' claims predicated on GSK's representations that nothing heals a cold sore faster than Abreva and that Abreva can heal a cold sore in 2.5 days are dismissed without prejudice. Plaintiffs' claims are dismissed with prejudice to the extent they are predicated on Plaintiffs' other allegations because it is clear that "the complaint could not be saved by amendment." *Stoyas v. Toshiba Corp*., 896 F.3d 933, 939 (9th Cir. 2018). Considering, as the Court must, "the relevant factors [set forth in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222(1962)]," *id*. (alteration in original), the Court finds that amendment would be futile, *see Foman*, 371 U.S. at 182. Plaintiffs' claims predicated on GSK's representations that Abreva is effective and can shorten the healing time and duration of symptoms are invariably preempted by 21 U.S.C. § 379r. *See Perez v. Mortg. Electronic Reg. Sys., Inc*., 959 F.3d 334, 341 (9th Cir. 2020) (affirming dismissal with prejudice on futility grounds where amendment "would not have changed the determination that the action was a preemptive, pre-foreclosure action seeking to challenge banks' authority to foreclose, and that such an action is impermissible under California law").

Plaintiffs may file an amended complaint within twenty-one days of this order solely to correct the deficiencies identified herein. Failure to file a timely amended complaint will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated:  March 9, 2023

_____
JON S. TIGAR
United States District Judge