UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAWNEYA HOUSER,<br><br>    Plaintiff,<br><br>    v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC,<br><br>    Defendant. | Case No. 21-cv-09390-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 58 |

Before the Court is Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC's ("GSK") motion to dismiss. ECF No. 58. The Court will grant the motion.

## I.    BACKGROUND

The factual and procedural background to this case is set forth in greater detail in this prior order granting GSK's motion to dismiss. *See* ECF No. 53. In short, Plaintiff Tawneya Houser alleges that GSK's advertisements for Abreva, an over-the-counter medication that treats the herpes simplex virus, are intentionally misleading. ECF No. 57 ¶ 1. Specifically, Houser alleges that GSK's representation that Abreva "can get rid of [a] cold sore in 2½ days," *id.* ¶ 24 (internal quotation marks omitted), led reasonable consumers to "mistakenly believe believe that Abreva would *typically* heal cold sores in 2½ days," *id.* ¶ 20 (emphasis in original). She brings claims for (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) violation of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1792 *et seq.*; (4) violation California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code § 17500 *et seq.*; (5) breach of express warranty; and (6) unjust enrichment. *Id.* ¶¶ 149–50. She seeks to represent a nationwide class and California subclass of

similarly situated individuals. *Id.* ¶ 137.

The prior complaint asserted additional claims against GSK and predicated all claims on additional representations made by GSK in other advertisements. *See generally* ECF No. 25. The Court dismissed that complaint on March 9, 2023 on the grounds that claims predicated on all but one of those additional representations were preempted by federal law and that the complaint otherwise failed to comply with Federal Rule of Civil Procedure 9(b). *See generally* ECF No. 53. Houser filed the operative complaint on March 30, 2023, ECF No. 57, and GSK filed the instant motion on April 13, 2023, ECF No. 58. The Court took the motion under submission without a hearing on June 23, 2023. ECF No. 64.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.

1  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV. DISCUSSION

GSK moves to dismiss Houser's claims to the extent that she alleges that Abreva categorically cannot heal a cold sore in as few as 2.5 days and to the extent that she alleges that Abreva typically cannot heal a cold sore in 2.5 days. ECF No. 58 at 14–20. Houser contends that she "never alleges the 2 ½ days claim is literally false; she alleges that the 2 ½ days claim is misleading." ECF No. 61 at 8. In connection with several of her claims, however, Houser expressly alleges that the 2.5-days claim is literally false. *See* ECF No. 56 ¶¶ 186, 195. The Court therefore construes Houser's contention as non-opposition to the dismissal of her claims to the extent that they are based on her allegations that Abreva categorically cannot heal a cold sore in as few as 2.5 days.

### 1. UCL, FAL, CLRA

The sufficiency of false advertising claims under the CLRA, FAL, and fraudulent and unfair prongs of the UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)); *see Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017). Under this test, Houser must plead facts sufficient to "show that 'members of the public are likely to be deceived.'" *Id.* (quoting *Freeman*, 68 F.3d at 289). The test "requires more than a mere possibility that [a representation] 'might conceivably be misunderstood by some few customers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508). In conducting this inquiry, the Court considers that reasonable consumers should not "be expected to look beyond misleading representations on the front of the [packaging] to discover the truth . . . on the side of the [packaging]." *Williams*, 552 F.3d at 939. "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for a decision on" a motion to dismiss. *Id.*

3

The principal advertisement that Houser identifies in her complaint reads, "YOU CAN GET RID OF YOUR COLD SORE IN 2 ½ DAYS*." ECF No. 57 ¶ 24. The asterisk corresponding to the statement is defined immediately below the statement and reads, "*When used at first sign. Median healing time 4.1 days. 25% of users healed by 2.5 days." *Id.* Every advertisement that Houser identifies in the complaint contains a materially identical representation and corresponding disclaimer. *See id.* ¶¶ 24–40.

The Court disagrees that this representation is likely to mislead a reasonable consumer, for two reasons. First, the representation itself, standing alone, does not insinuate that Abreva typically heals a cold sore in as few as 2.5 days. A reasonable consumer is not likely to be misled by a representation when a plaintiff's interpretation of that representation is inconsistent with its plain language. *See, e.g.*, *Souter v. Edgewell Personal Care Co.*, 542 F. Supp. 3d 1083, 1094 (S.D. Cal. 2021) ("No reasonable consumer would read 'hypoallergenic' and 'gentle' to mean that [the product] is completely free of ingredients that can cause an allergic reaction."); *Rugg v. Johnson & Johnson*, No. 17-cv-05010-BLF, 2018 3023493, at *1 (N.D. Cal. June 18, 2018) ("Given these definitions, the Court finds it completely implausible that a reasonable consumer would understand the use of the term 'hypoallergenic' on a product's label to mean that the product does not contain *any* ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have *any* other negative effect, regardless of whether effect constitutes an allergic reaction." (emphases in original)); *Punian v. Gillette Company*, No. 14-cv-05028-LHK, 2016 WL 1029607, at *5, 8 (N.D. Cal. Mar. 15, 2016) (relying on definition of the term "guaranteed" to conclude that "Guaranteed for 10 Years in storage" is "not likely to deceive a reasonable consumer into believing that Duralock Batteries have no potential to leak for ten years in storage." (internal quotation marks omitted)).

In its ordinary use, the term "can" denotes possibility, not probability. *See Can*, Merriam-Webster Online Dictionary (2023) (noting that the term is "used to indicate possibility" and defining the term as "be physically or mentally able to"); *cf. Lyft, Inc. v. Quartz Auto Techs. LLC*, No. 21-cv-01871-JST, 2022 WL 19975246, at *11 (N.D. Cal. Nov. 3, 2022) (finding that teachings from a patent specification were "not limiting" because "the patent uses the inclusive

4

'can' rather than restrictive 'must' or 'shall'"). The plain language of the representation thus indicates that Abreva is capable of healing a cold sore within 2.5 days but does not imply that the product typically or always achieves that result. For a consumer to interpret this statement in the manner advocated by Houser would therefore be unreasonable. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) (concluding that, where there is a "prevalent understanding of [a] term," "[j]ust because some consumers may unreasonably interpret the term differently does not render the use of [the term] . . . false or deceptive").

Second, even if the representation were misleading, the corresponding disclaimer eliminates any doubt as to its meaning. An alleged misrepresentation is not misleading where "[q]ualifying language in the challenged advertising mak[es] the meaning of the alleged misrepresentation clear." *Moreno v. Vi-Jon, Inc.*, No. 20-cv-1446 JM(BGS), 2021 WL 807683, at *5 (S.D. Cal. Mar. 3, 2021) (collecting cases); *see Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (holding that a reasonable consumer would not likely be deceived because "[n]one of the qualifying language is hidden or unreadably small" and "the qualifying language appears immediately next to the representations it qualifies and no reasonable reader could be ignore it."). The disclaimer language is located directly beneath the representation, is plainly legible, and reads, "When used at first sign. Median healing time 4.1 days. 25% of users healed by 2.5 days." ECF No. 57 ¶ 24. The disclaimer thus indicates that Abreva can only heal a cold sore in 2.5 days if used at the first sign as a cold sore, that approximately half of Abreva users are healed in fewer than 4.1 days, that approximately half of users are healed in more than 4.1 days, and that only a quarter of users are healed in 2.5 days. This language is entirely consistent with the premise that Abreva has the capacity to heal a cold sore in 2.5 days but does not indicate that this outcome occurs so frequently as to be characterizable as typical.

For each of the foregoing reasons, the Court concludes that this is the "rare situation" where the Court "may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham v. Hain Celestial Grp.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014). Accordingly, the Court will dismiss these claims.

Plaintiff's argument to the contrary relies principally on *Anthony v. Pharmavite*, No. 18-

cv-02636-EMC, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019), which is readily distinguishable. There, Pharmative's labeling for its biotin supplements represented that the supplements "may help support healthy hair, skin, and nails." *Id.* at *1. The language was accompanied by an asterisk, which was defined on the back of the label as follows: "Biotin may help support healthy hair, skin, and nails in those that are biotin deficient." *Id.* In denying Pharmative's motion to dismiss, the court concluded that the term "may" in the representation was misleading because the plaintiffs had plausibly alleged that "99.9962 percent of people have *no* possibility of benefitting from the Biotin Products," and "[a] reasonable consumer could understand 'may' to mean a reasonable possibility or reasonable probability, rather than a vanishing small possibility on the order of 0.00138 percent." *Id.* at *4. Additionally, the disclaimer was located on the back of the label, and disclaimer language itself was insufficient "to disabuse the consumer of any misconceptions engendered by the health benefit representations." *Id.*

Here, Houser does not allege that there is a negligible possibility that Abreva performs as advertised, *i.e.*, that Abreva functionally cannot achieve a healing time of 2.5 days, but rather alleges that Abreva does not achieve that result with the frequency advertised. And unlike the disclaimers on Pharmative's supplement labels, the disclaimers in the Abreva advertisements are located directly beneath the representation and contain language that eliminates any ambiguity in the representation.

### 2. Breach of Express Warranty and Unjust Enrichment

Dismissal of breach of express warranty and unjust enrichment claims is appropriate where those claims "rely on deception that, as a matter of law, does not exist." *Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-cv-06664-BLF, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020). Houser does not dispute this point. ECF No. 61 at 8–9. Accordingly, the Court will dismiss these claims.

### 3. Song-Beverly Act

Under the Song-Beverly Act, "consumer goods sold in California carry an implied warranty of merchantability, meaning . . . that they must be 'fit for the ordinary purposes of which such goods are used.'" *Bezirganyan v. BMW of N. Am., LLC*, 562 F. Supp. 3d 633, 641 (C.D. Cal.

2021) (quoting Cal. Civ. Code § 1791.1(a)(2)). This warranty "does not 'impose a general requirement that the goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" *Id.* (quoting *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)). Therefore, a plaintiff must allege that "the product lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). Houser claims that GSK breached the implied warranty of merchantability, but she does not allege that the product is unfit for ordinary use. Instead, she alleges that "Abreva does not work as advertised," ECF No. 57 ¶ 42 and concedes that GSK's 2.5-days claim is not false, ECF No. 61 at 8. Houser thus fails to state a claim, and the Court will dismiss these claims. Even if Houser had predicated her this claim on breach of express warranty, the claim would still fail for the reasons above.

### 4. UCL Unlawful Prong

Houser's remaining claim arises under the UCL's unlawful prong. "An action under the UCL's unlawful prong 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (quoting *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*, 20 Cal. 4th 163, 180 (1999)). Because Houser has failed to state a claim for any other violation of law, she has failed to state a claim under the UCL's unlawful prong. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012)). The Court will dismiss this claim.

## CONCLUSION

For the foregoing reasons, GSK's motion is granted. Because the 2.5-days representation is not misleading as a matter of law, Houser's complaint cannot be cured by the allegation of additional facts. Accordingly, amendment would be futile, and Houser's claims are dismissed

/ / /
/ / /
/ / /
/ / /
/ / /